UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

MARCOS NUNEZ,

                    Petitioner,              10 Civ. 0060 (JGK)

          - against -                        OPINION AND ORDER

T. CONWAY,

                    Respondent.
————————————————————————————

JOHN G. KOELTL, District Judge:

     The petitioner, Marcos Nunez, brings this pro se
petition for habeas corpus pursuant to 28 U.S.C. § 2254.
After a jury trial, the petitioner was convicted of two
counts of robbery in the first degree in violation of N.Y.
Penal Law § 160.15(1), two counts of robbery in the second
degree in violation of N.Y. Penal Law § 160.10(2)(a), and
one count of burglary in the first degree in violation of
N.Y. Penal Law § 140.30(2).  The sentencing court imposed
an aggregate sentence of thirty years imprisonment.  The
petitioner's conviction was affirmed on appeal by the
Appellate Division, First Department, of the New York State
Supreme Court, and leave of appeal to the New York Court of
Appeals was denied.

     The petitioner asserts that a writ of habeas corpus
should be issued for four reasons.  First, he argues that
the evidence at trial was legally insufficient to prove the

1

physical injury component of the crime of second degree
robbery.  Second, he claims that the police violated his
Fourth Amendment right to be free from unreasonable
searches because the police lacked probable cause to arrest
him.  Third, he asserts that the prosecutor introduced
improper rebuttal testimony unrelated to a core fact of the
case.  Fourth, the petitioner claims that his thirty-year
sentence based on his second violent felony offender status
violated his Sixth Amendment right to factual findings by a
jury.  For the reasons explained below, the petition for a
writ of habeas corpus is **denied**.


## I.

     The evidence at trial established that the petitioner
perpetrated a string of robberies against elderly citizens
in July of 2006.  (Trial Tr. ("Tr."), 41-42, 52-53, 82-83,
Feb. 6, 2007.)  The first robbery occurred on July 10,
2006.  (Tr. 52.)  Melinda Hughes, who was about 80 years
old and five feet tall at the time of the robbery, was
returning to her apartment when she noticed the petitioner
sitting on the steps of the building where she lived.  (Tr.
52-53.)  The two spoke briefly; then the petitioner opened
the door to Ms. Hughes's building and followed her into the
elevator.  (Tr. 53-54.)  Ms. Hughes exited the elevator at

the sixth floor.  (Tr. 55-56.)  She testified at trial that
the petitioner followed her out of the elevator, struck her
several times, snatched her chain and earrings, and went
through her purse.  (Tr. 55-56.)  The attack left Ms.
Hughes on the floor and unable to move.  (Tr. 58.)  Her son
found her approximately ten minutes after the attack and
called 911.  (Tr. 58, 62-63.)  Ms. Hughes was admitted into
Mt. Sinai Hospital where doctors diagnosed her with a
pelvic fracture.  (Tr. 59.)

The petitioner committed the second robbery on July
12, 2006.  (Tr. 40.)  Felicia Baez, who was around 73 years
of age and four feet eleven inches tall, was walking down
Park Avenue near 102nd Street around 2:00 P.M. when she
noticed the petitioner.  (Tr. 40-41, 50.)   The two spoke
about the weather.  (Tr. 41.)  Ms. Baez noticed that the
petitioner had a tattoo on his right leg.  (Tr. 40-41.)
Moments later, the petitioner put his hands on Ms. Baez's
chest, hit her once with a closed fist underneath her chin,
and scratched her chest.  (Tr. 42, 45.)  He then hit her
hand, knocking it out of the way, so he could grab her
jewelry.  (Tr. 42-43.)  Ms. Baez went to the doctor for a
scheduled mammogram a week after the incident and her
doctor biopsied a stain on her left breast.  (Tr. 45.)  She
said the stain was "part of the blow that [the petitioner]

gave [her]." (Tr. 45.)  The scratches remained on Ms. Baez's chest after the mammogram visit, and her chest was "a little bit like sore" for a few weeks subsequent to the robbery. (Tr. 45.)

The third robbery occurred on July 21, 2006. (Tr. 82-83.)  Rafael Santiago, who was around 73 years of age at the time, was entering his apartment building around 12:30 P.M. when he noticed the petitioner knocking on the door. (Tr. 81-83.)  Mr. Santiago let the petitioner in and they proceeded to the elevator. (Tr. 83, 93.)  In the elevator, the petitioner struck Mr. Santiago in the head with a heavy object and then took Mr. Santiago's two chains and a bracelet. (Tr. 85, 95-97.)  The encounter left Mr. Santiago with two bumps on his head, causing headaches and dizziness, for which he used ice and Tylenol. (Tr. 85.) Mr. Santiago stated that this pain lasted about three weeks "because the blow was very hard, the pain." (Tr. 85.)

Mr. Santiago reported the crime to the 23rd precinct on July 21, 2006. (Tr. 85.)  On July 22, 2006 Mr. Santiago accompanied Detective Munoz to a pawn shop where he identified the two chains and bracelet stolen from him the previous day. (Tr. 87-88, 143-44.)  From the pawn shop's records, Detective Munoz learned that the petitioner had

pawned Mr. Santiago's property.  (Tr. 144.)  Detective
Munoz arrested the petitioner that day.  (Tr. 144-47.)

    Before trial, the petitioner brought a motion to
suppress on two grounds. (Pretrial Suppression Hr'g
("Hr."), 73-77, Feb. 2, 2007.)  First, he argued that his
arrest was unlawful because it was not based on probable
cause that he committed the robberies, but on probable
cause that he pawned the stolen items.  (Hr. 73-75.)  He
also contended that a photo identification procedure and
subsequent lineup were overly suggestive.  (Hr. 75-77.)
The motion to suppress was denied on February 2, 2007.
(Hr. 85-88.)

    At trial, the petitioner testified in his own defense.
(Tr. 176.)  He testified that he often pawned property for
others, taking a cut from the sale.  (Tr. 176, 181.)  The
petitioner alleged that on July 10, 2006, he met a man
known as "Irv" or "J.B." at a park at Third Avenue and
103rd Street and agreed to pawn some items for him.  (Tr.
177-78.)  The petitioner testified that he did the same on
July 12, 2006 and July 21, 2006 after receiving calls from
Irv.  (Tr. 178, 182, 185, 192-98.)  While incarcerated,
the petitioner provided to the prosecution Irv's NYSID
number, the number that identifies New York State

arrestees, in hopes that this evidence would confirm his alibi.  (Tr. 246.)

Both parties rested their cases on February 7, 2007. On February 9, 2007 the prosecution applied to reopen its case to call a rebuttal witness.  (Tr. 239.)  The court reopened the case, and Captain James Cavaleri, a shift captain for the Downstate Department of Correctional Services, testified.  (Tr. 246.)  He produced the personal appearance form that matched the NYSID number that the petitioner had previously provided to the state.  (Tr. 256-57.)  The form indicated that the inmate had a "GB" tattoo on his left arm and "JA4B" tattoo on his right arm, but there was no recording of a tattoo on his leg matching the description given by Ms. Baez during her testimony. (Tr. 257.)

The jury returned its verdict on February 13, 2007. (Tr. 363.)  Five counts were submitted to the jury: count one charged the petitioner with the first degree robbery of Ms. Hughes; count two charged him with the first degree burglary of Ms. Hughes; count three charged him with the second degree robbery of Ms. Baez; count four charged him with the first degree robbery of Mr. Santiago; and count five charged him with the second degree robbery of Mr. Santiago.  The jury found petitioner guilty on all five

counts.  (Tr. 364-65.)  The sentencing court classified the petitioner as a second violent felony offender and imposed an aggregate sentence of thirty years imprisonment. (Sentencing Hr'g, ("S.") 8-9, March 13, 2007.)

The petitioner appealed his conviction to the Appellate Division, First Department, of the New York State Supreme Court.  The petitioner asserted reasons for reversal very similar to the reasons presented in this petition, except that petitioner's challenge of his sentence was limited to the claim that the sentence was harsh and excessive.  (Br. for Def.-Appellant, People v. Nunez, 875 N.Y.S.2d 484 (App. Div. 2008) (Ex. A to Resp't's Decl. in Opp'n to the Pet. for Writ of Habeas Corpus, ECF No. 8.)).  The Appellate Division unanimously upheld the conviction, finding that the "evidence was sufficient to establish the physical injury element of the second-degree robbery convictions."  People v. Nunez, 875 N.Y.S.2d 484, 485 (App. Div. 2008).  The court found that the "jury was entitled to credit the victims' descriptions of their injuries and to draw the conclusion that these injuries were more than mere 'petty slaps, shoves, kicks, and the like.'"  Id. (citing In re Philip A., 400 N.E.2d 358 (N.Y. 1980); People v. Chiddick, 866 N.E.2d 1039 (N.Y. 2007)). The court also held that there was "probable cause for

defendant's arrest based on evidence that he had pawned property taken in a robbery," that the state's "rebuttal evidence clearly tended to disprove defendant's case," and that the court "perceiv[ed] no basis for reducing the sentence." Id.

The petitioner requested leave to appeal to the New York State Court of Appeals, which was denied. People v. Nunez, 912 N.E.2d 1090 (N.Y. 2009).


## II.

The petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is timely. See 28 U.S.C. § 2244(d). Because a state court has adjudicated the petitioner's claims on the merits, the claims will be evaluated under the standard of review set forth in 28 U.S.C. § 2254(d). That section provides that an application for a writ of habeas corpus should only issue if adjudication of the claim in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d); see Harrington v. Richter, 131 S. Ct.
770, 783-84 (2011); Williams v. Taylor, 529 U.S. 362, 402-
03 (2000); Lynn v. Bliden, 443 F.3d 238, 245 (2d Cir.
2006).

A state court decision is "contrary to" clearly
established federal law if "the state court arrives at a
conclusion opposite to that reached by [the Supreme Court]
on a question of law" or "if the state court confronts
facts that are materially indistinguishable from a relevant
Supreme Court precedent and arrives at a result opposite
to" the Supreme Court's result.  Williams, 529 U.S. at 405;
see also Williams v. Artus, 691 F. Supp. 2d 515, 522
(S.D.N.Y. 2010).  A state court decision involves "an
unreasonable application of . . . clearly established
Federal law" when the state court "correctly identifies the
governing legal rule but applies it unreasonably to the
facts of a particular prisoner's case."  Williams, 529 U.S.
at 407-408.  To meet that standard, "the state court
decision [must] be more than incorrect or erroneous;" it
"must be objectively unreasonable."  Lockyer v. Andrade,
538 U.S. 63, 75.  "[I]t is well-established in [this]
[C]ircuit that the objectively unreasonable standard of §
2254(d)(1) means that [a] petitioner must identify some
increment of incorrectness beyond error in order to obtain

9

habeas relief." <u>Cotto v. Herbert</u>, 331 F.3d 217, 248 (2d Cir. 2003) (internal citations and quotation marks omitted); <u>Artus</u>, 691 F. Supp. 2d at 522.

A state court's factual findings are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence.  <u>See</u> 28 U.S.C. § 2254(e)(1). The petitioner "bears the [ultimate] burden of proving by a preponderance of the evidence that his constitutional rights have been violated." <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997).

### III.

#### 1.

The petitioner first argues that the evidence at trial was legally insufficient to prove the physical injury component of the two charges of second degree robbery for the alleged robberies of Ms. Baez and Mr. Santiago. A rational trier of fact could have found that both Ms. Baez and Mr. Santiago experienced substantial pain and the Appellate Division did not come to an objectively unreasonable determination when affirming the sufficiency of the evidence.  Therefore, this claim is without merit.

When considering insufficiency of the evidence claims, courts are required to consider the trial evidence in the

light most favorable to the state and uphold the conviction
if "any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt."
Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "When
considering the sufficiency of the evidence of a state
conviction, '[a] federal court must look to state law to
determine the elements of the crime.'"  Ponnapula v.
Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting
Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)).
The petitioner's claim "face[s] a high bar," and the state
court decision may only be overturned if it was
"'objectively unreasonable.'"  Coleman v. Johnson, 132
S.Ct. 2060, 2062 (2012) (per curiam)(quoting Renico v.
Lett, 130 S.Ct. 1855, 1862 (2010)).  Therefore, courts must
use a "doubly deferential standard of review" when
considering a petitioner's sufficiency challenge, deferring
first to the jury's verdict, and second to the state
court's determination under the standard set forth in 28
U.S.C. § 2254(d).  Garbutt v. Conway, 668 F.3d 79, 81 (2d
Cir. 2012)(per curiam).  Thus, where the state courts have
denied a claim of insufficient evidence on the merits, the
writ should not be granted unless "no reasonable court
could have held that any reasonable jury could have read
the evidence to establish petitioner's guilt beyond a

reasonable doubt." Id. at 82.  Moreover, federal courts should be particularly deferential "where, as here, the state appellate court's assessment of the evidence is intertwined with its interpretation of a complex and evolving body of state law, with which the state courts have far more familiarity than [federal courts] have."  Id.

Under N.Y. Penal Law § 160.10(2)(a), the petitioner is guilty of second degree robbery if he forcibly stole property and in the course of the commission of the crime or the immediate flight therefrom, he caused physical injury to any person not a participant in the crime.  N.Y. Penal Law § 10.00[9] defines "physical injury" as "impairment of physical condition or substantial pain."

Under N.Y. Penal Law § 10.00[9], the first way the state may prove physical injury is to demonstrate "impairment of [the victim's] physical condition."  Because the respondent does not argue that Ms. Baez or Mr. Santiago suffered the impairment of any physical condition, this provision is not at issue.

Under the second part of N.Y. Penal Law 10.00[9], physical injury may be proven if the victim experiences substantial pain.  The New York Court of Appeals has addressed the substantial pain standard in two seminal cases.  The first was In re Philip A., 400 N.E.2d 358 (N.Y.

1980).  There, the complainant was hit in the face, causing
him to cry and to feel like bumps were appearing, though
none did.  Id. at 359.  His injury resulted in red marks
and pain.  Id.  In analyzing the complainant's injury, the
Court of Appeals observed that pain is a subjective matter,
but the use of the term "substantial" in the statute meant
that the "Legislature did not intend a wholly subjective
criterion to govern."  Id.  Thus, while the trier of fact
"can consider, among other factors, the subjective reaction
of the person claimed to have been assaulted, there is an
objective level . . . below which the question is one of
law, and the charge should be dismissed."  Id.  To support
this finding, the Court of Appeals relied on the Revisor's
note to N.Y. Penal Law 10.00[9], which states that "'petty
slaps, shoves, kicks and the like' . . . are not within
the definition" of substantial pain.  Id.  The Court of
Appeals held that the prosecution had failed to prove
substantial pain because the complainant's injury was
"consistent with 'petty slaps' and, therefore, was
insufficient to establish 'substantial pain' beyond a
reasonable doubt."  Id.

The Court of Appeals further clarified the standard
for substantial pain more recently in People v. Chiddick,
866 N.E.2d 1039 (N.Y. 2007).  In Chiddick, the defendant

13

bit the victim's fingernail in a scuffle, causing the victim's fingernail to crack and his finger to bleed.  Id. After the scuffle, the victim went to the hospital and received a tetanus shot.  Id.  At trial, the victim testified that he experienced in between a little and a lot of pain from the injury, confirming that the pain was "moderate."  Id.  In determining whether the standard for substantial pain had been met, the Court of Appeals found that the pain the victim experienced had to be more than "slight or trivial," but did not need to be "severe or intense" to be substantial.  Id. at 1040.  The Court of Appeals found that "there are several factual aspects of a case that can be examined to decide whether enough pain was shown to support a finding of substantiality."  Id.  These factors included: (1) the injury viewed objectively; (2) the victim's subjective description of how he felt; (3) whether subsequent medical treatment was sought; and (4) the motive of the offender.  Id.  Examining each of the factors, the Court of Appeals found: (1) that the victim's injury, viewed objectively, "would normally be expected to bring with it more than a little pain;" (2) that the victim's subjective testimony of his pain confirmed that it was not trivial; (3) that he sought medical treatment indicating that his pain was significant; and (4) that the

14

defendant's motive was to inflict as much pain as possible because he was trying to make the victim let go of him. Id.  Therefore, the Court of Appeals held that the evidence was sufficient to support the jury's finding that defendant caused substantial pain and therefore physical injury to his victim.  Id.

After the Chiddick decision New York Courts have also found the duration of the pain to be relevant to an objective assessment of the injury.  See, e.g., People v. Rivera, 838 N.Y.S.2d 727, 729 (App. Div. 2007) (continuing pain for several days contributed to finding of substantial pain).

With respect to subsequent medical treatment, New York courts have found that while such treatment is relevant, medical treatment is not necessary to establish substantial pain, and seeking medical treatment alone is not sufficient to establish substantial pain.  See People v. Guidice, 634 N.E.2d 951, 954 (N.Y. 1994) ("Lack of medical treatment is but a factor to consider . . ."); People v. Ferrer, 924 N.Y.S.2d 288, 288-89 (App. Div. 2011) (the evidence was insufficient to establish substantial pain where, "[a]lthough [the victim] sought medical attention, no evidence was adduced that he required medical treatment or that he missed any days of work.").

A rational trier of fact could have found that Mr.
Santiago experienced substantial pain within the meaning of
N.Y. Penal Law 10.00[9].  Under Chiddick's first factor,
Mr. Santiago's injury, viewed objectively, rises above the
level of "petty slaps, shoves, kicks, and the like" because
Mr. Santiago was hit over the head with a heavy object,
leaving two bumps and pain that lasted for several weeks.
In re Philip A., 400 N.E.2d at 359.  Under Chiddick's
second factor, Mr. Santiago's subjective description of how
he felt demonstrated that he experienced more than "slight
or trivial pain" because he treated his injuries with
Tylenol and ice packs and said his head hurt for three
weeks subsequent to the robbery.  Chiddick, 866 N.E.2d at
1040.  The fact that Mr. Santiago did not seek medical
treatment was not determinative, but was only a factor for
the jury and Appellate Division to consider when each found
Mr. Santiago's level of pain to be substantial.  Guidice,
634 N.E.2d at 954.  And the petitioner's motive, Chiddick's
last factor, was to cause pain because he used a heavy
object to incapacitate Mr. Santiago by hitting him over the
head.  It cannot be said that the Appellate Division came
to an objectively unreasonable determination when it found
that a reasonable jury could have concluded that Mr.
Santiago experienced substantial pain, as that term has

16

been interpreted by the New York courts.  Therefore, the petitioner's sufficiency of the evidence claim must fail as to Mr. Santiago.

While it is a closer case, it cannot be said that the Appellate Division reached an objectively unreasonable conclusion when it found that a rational trier of fact could have found that Ms. Baez experienced substantial pain.  Examining Chiddick's non-inclusive factors, first, Ms. Baez's injury, viewed objectively, could cause substantial pain to an elderly, slight woman and rises above the level of "petty slaps, shoves, kicks and the like."  In re Philip A., 400 N.E.2d at 359.  The jury could take into account the objective circumstances of the injury, namely the fact that the petitioner pushed, punched, and knocked away the hand of a four foot eleven inch, seventy-three year-old woman while pulling two chains from around her neck.  Considering Ms. Baez's physical stature, the jury could reasonably have concluded that Ms. Baez experienced substantial pain. Moreover, Ms. Baez's pain lasted over a week.  See, e.g., Rivera, 838 N.Y.S.2d at 729.  Ms. Baez's subjective description of how she felt evidenced that her pain was more than "slight or trivial."  Chiddick, 866 N.E.2d at 1040.  Ms. Baez stated that she was "a little bit sore" when she visited her doctor for a

scheduled mammogram a week after the incident had occurred.
While her pain was not "severe or intense," it was more
than "slight or trivial" in light of the fact that she was
still sore for a few weeks after the robbery.  Chiddick,
866 N.E.2d at 1040.  Ms. Baez did not seek subsequent
medical treatment for the injury although her breast was
apparently still bruised a week after the robbery when she
went to the doctor for a mammogram, and her chest was a
"little bit like sore" for a few weeks.  There is no
evidence that the injury was inflicted to cause pain.

The interpretation of N.Y. Penal Law 10.00[9] is a
matter of state law.  The Appellate Division addressed the
two leading Court of Appeals cases, In re Philip A. and
Chiddick, when it found the evidence sufficient to
establish Ms. Baez's substantial pain.  Federal courts
should be particularly deferential to state courts when
interpreting the sufficiency of the evidence to satisfy the
elements of a complex and evolving body of state law.  See
Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012) (citing
Garbutt, 668 F.3d at 81).

Therefore, drawing all inferences in favor of the
jury's determination and deferring to the Appellate
Division's rejection of the petitioner's arguments, a
reasonable trier of fact could have found that Ms. Baez

18

experienced substantial pain and the Appellate Division did not come to an objectively unreasonable conclusion when it affirmed that determination.

## 2.

The petitioner also claims that the police violated his Fourth Amendment right to be free from unreasonable searches when they arrested him without probable cause. This claim must be dismissed because Fourth Amendment claims cannot be re-litigated on federal habeas review when they have been fully and fairly litigated below.  Stone v. Powell, 428 U.S. 465, 481-82 (1983).

"[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Id. at 482; see also Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991); Canteen v. Smith, 555 F. Supp. 2d 407, 416 (S.D.N.Y. 2008).  Therefore, in order to receive habeas review of his claim, the petitioner must allege that he was not given a full and fair opportunity to litigate because the state failed to provide "corrective procedures" by which his claim could be

adjudicated, or that he was unable to avail himself of the state's procedures "because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).  If a state "provides no procedure for defendants to redress Fourth Amendment violations, federal habeas corpus remains available." Shaw v. Scully, 654 F. Supp. 859, 863 (S.D.N.Y. 1987).  But, if "the state by enacting a statutory mechanism for the suppression of evidence obtained by unlawful search and seizure, has provided an opportunity fully and fairly to litigate Fourth Amendment issues, the federal courts may not reexamine those issues on habeas corpus review." Id. (citing McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983)).  New York "provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial" through a suppression hearing under N.Y. Crim. Proc. Law § 710.  Shaw, 654 F. Supp. at 864.

In this case, the trial court conducted a suppression hearing on his probable cause and suggestive identification claims.  Moreover, the petitioner then litigated those claims before the Appellate Division and sought review from the Court of Appeals.  Thus, the petitioner was given an "opportunity for full and fair litigation" of his Fourth Amendment claim and exercised that opportunity.  Stone, 428

U.S. at 482.  Therefore, petitioner's Fourth Amendment claim is barred on habeas review and is dismissed.

### 3.

The petitioner's third claim for habeas relief alleges that the state introduced improper rebuttal testimony during his trial.  Specifically, the petitioner argues that the state's introduction of evidence that "J.B." or "Irv" did not have a tattoo did not contradict anything that the petitioner testified to on the witness stand, and thus was improper rebuttal testimony that prejudiced the petitioner by violating his due process rights.  This claim is denied because the state trial court did not deprive the petitioner of a fundamental right by re-opening the case to allow for the testimony of Captain James Cavaleri.

"Issues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." McCray v. Artuz, 93 Civ. 5757, 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994).  A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived the petitioner of due process because it was so

pervasive that it denied the petitioner a fundamentally fair trial.  See Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985).  In this case there was no error, and certainly no fundamental unfairness.

N.Y. Crim. Proc. Law § 260.30(7) allows a court to permit rebuttal evidence. It even gives the court discretion to permit "either party to offer evidence upon rebuttal which is not technically of a rebuttal nature but more properly a part of the offering party's original case" if it is "in the interest of justice."  A state trial court generally has discretion in deciding a request to reopen the proof.  See People v. Whipple, 760 N.E.2d 337,341 (N.Y. 2001).

The introduction of the state's rebuttal evidence did not cause fundamental unfairness depriving the defendant of his constitutional due process rights.  The rebuttal evidence was offered to disprove the defendant's suggested defense that a state prisoner was actually the perpetrator of the robberies because the petitioner had pawned property for that person, who implicitly must have been the actual robber.  The fact that this state prisoner did not have the tattoo identified by Ms. Baez made that defense less likely.  The court, in its discretion, allowed the relevant witness testimony and did not deprive the petitioner of a

fundamental right by doing so.  Therefore, the court committed no error in admitting the state's rebuttal evidence and did not deprive the petitioner of a fundamentally fair trial.  The petitioner's claim based on improper rebuttal testimony is denied.

### 4.

The petitioner's final claim for habeas relief alleges that his sentence violated his Sixth Amendment right because there was no specific jury finding that his offenses were separate and distinct.  This claim is not exhausted, and in any event, is without merit.

On appeal to the Appellate Division and in his request for appeal to the Court of Appeals, the petitioner argued that his sentence was unduly harsh and excessive.  In his petition for habeas corpus, the petitioner alleges that absent a jury finding that his offenses were separate and distinct, the imposition of the thirty year sentence violated his right to a jury trial. Therefore, this claim is unexhausted.

However, even though exhaustion is a prerequisite to granting a petition for habeas corpus, an application may be denied on the merits, notwithstanding a failure to exhaust state court remedies.  See 28 U.S.C. § 2254 (b)(2).

In this case, the respondent argues that this claim should be denied on the merits and it is indeed without merit.

The petitioner argues that "the imposition of consecutive sentences, absent a specific jury finding that the offenses were separate and distinct, the imposition of these terms, violated petitioner's jury trial rights." (Pet. at 10.)  The argument is actually wrong.  The petitioner was sentenced, as a second violent felony offender, to a ten-year prison term on each of the five counts, of which he was convicted. (S. 8-9.)  For the July 10 attack on Ms. Hughes, the petitioner was sentenced on one count of first degree robbery and one count of burglary, with the sentences to run concurrently.  For the July 1 robbery of Mr. Baez, the petitioner's sentence was ordered to run consecutively to the sentences for the July 10 crimes and the sentences for the two robbery counts for July 21 were ordered to run concurrently with each other and consecutively to the other convictions.  Hence, each group of consecutive sentences related to a separate incident as found by the jury.

To the extent that the petitioner is really arguing that New York's enhanced sentencing scheme for a second violent felony offender violated the rule of Apprendi v. New Jersey, 530 U.S. 466 (2000) because a jury did not find

the petitioner guilty of the predicate felony in connection with his sentencing, the argument has no merit.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." <u>Id.</u> at 490. The petitioner was sentenced as a second violent felony offender pursuant to N.Y. Penal Law § 70.04. N.Y. Penal Law § 70.04 requires only that the sentencing court find that the defendant who is convicted of a violent felony offense has previously been convicted of a violent felony offense. This falls within the exception in <u>Apprendi</u> for the fact of a prior conviction. Courts in this Circuit have uniformly found that the similar statute for the sentencing of a "persistent violent felony offender," N.Y. Penal Law § 70.08, which requires a finding that the defendant was convicted of two or more predicate violent felonies, does not violate <u>Apprendi</u>, because it requires only proof of the fact of prior convictions. <u>See</u> <u>Washington v. Graham</u>, 355 F. App'x 543, 544-45 (2d Cir. 2009); <u>Hart v. Artus</u>, 09 Civ. 1032, 2012 WL 6628014 (S.D.N.Y. Dec. 20, 2012); <u>Neil v. Walsh</u>, 07 Civ. 6685, 2009 WL 382637, at *4 (S.D.N.Y. Feb. 17, 2009); <u>see</u>

also <u>Wheeler v. Phillips</u>, 05 Civ. 4399, 2006 WL 2357973
(E.D.N.Y. Aug. 15, 2006)(holding that sentencing under N.Y.
Penal Law § 70.04 does not violate <u>Apprendi</u>).

The petitioner's claim that his sentence violated the
Sixth Amendment is without merit and is denied.

## Conclusion

For the reasons explained above, the petition pursuant
to 28 U.S.C. § 2254 is **denied.**  The Court declines to issue
a certificate of appealability pursuant to 28 U.S.C. § 2253
(c)(2) because the petitioner has failed to make a
substantial showing of the denial of a constitutional
right.  The Clerk is directed to enter judgment dismissing
the petition and closing this case.

**SO ORDERED.**

**Dated:    New York, New York**
           **February 14, 2013**    _____/S/_____

                              **John G. Koeltl**
                        **United States District Judge**